(55 Misc. Rep. 231)

PICKHARDT v. PRATT.

(Supreme Court, Appellate Term. June 27, 1907.)

1. HUSBAND AND WIFE—LIABILITY OF HUSBAND—NECESSARIES FURNISHED WIFE—EVIDENCE—SUFFICIENCY.

In an action against a husband for necessaries furnished his wife, evidence *held* to rebut the presumption that the necessaries were furnished on the husband's credit by showing that credit was given to the wife alone.

2. SAME—BURDEN OF PROOF.

Where the husband and wife are living apart, one who seeks to recover against the husband for necessaries furnished the wife has the burden of showing that the circumstances are such as to render the husband liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Husband and Wife, § 844.]

3. COURTS—MUNICIPAL COURT—COSTS—POWER TO AWARD—ORAL PLEADINGS.

Under Municipal Court Act, Laws 1902, p. 1585, c. 580, § 332, providing that costs shall be allowed to the prevailing party who files a verified pleading or a written notice of appearance, where the pleadings were oral and no written notice of appearance was served, costs were improperly allowed.

Appeal from Municipal Court, Borough of Manhattan, Fourteenth District.

Action by Lillian Pickhardt against Prunell Pratt. From a judgment for defendant, plaintiff appeals. Judgment modified, by striking out the costs, and, as modified, affirmed.

Argued before GILDERSLEEVE, P. J., and SEABURY and PLATZEK, JJ.

Edward H. Tatum, for appellant.

Hazelton & Hazelton (John H. Hazelton, of counsel), for respondent.

GILDERSLEEVE, P. J. The action is to recover for room and meals furnished to defendant's wife. The justice found for defendant. Plaintiff appeals.

The only witnesses were plaintiff and defendant's wife. The wife of defendant is an actress, and is known under the name of Julia Corwin. Defendant is an actor. On or about April 16, 1906, she came to plaintiff's boarding house and engaged room and board. She paid regularly every week up to about May 14, 1906, after which her payments were irregular, and plaintiff claims a balance due of $88.95. The parties, however, stipulated that, "if judgment be rendered for the plaintiff, it shall be for $71.90, with interest from November 19, 1906." Plaintiff says that defendant came with his wife the first night, and called at plaintiff's house to see his wife, but that the price was arranged with the wife. She also says that the wife was known in plaintiff's house under her stage name as Julia Corwin. Plaintiff is asked on cross-examination:

"When you arranged about the price, did you know that she was on the stage, earning her own living? A. Certainly I knew she was on the stage; but I did not know whether she earned her own living entirely on the stage, or whether he provided for her. I don't think he said anything. I think a friend

spoke about a young lady in the company [theatrical] coming, and that she was married. She told me both names. I supposed she was earning a salary, if she was in the company. She told me [some time later] that she expected to pay it [the balance due] herself, and she said her husband was working, and also that he was getting money from home."

Two receipts for payments on account of room and board are shown, which begin thus: "Received from Julia Corwin," etc. She is asked:

"Did you ever make any demand upon Mr. Pratt, defendant, for any of this money, during any of the time she lived with you? A. No, sir; I did not. Q. Did he ever pay you any of the money? A. He never did. Q. Whatever was paid was paid by her personally? A. Yes."

The defendant's wife testified that she has not been divorced from defendant, nor separated from him by "act of the court," but that she does not live with him. Also:

"Q. Why don't you live with him? A. Because I have separated from him by mutual consent. He gives me nothing for my support. Q. At the time you came to plaintiff's house, did he support you? A. He did not. He never, since I went to plaintiff's house, has contributed to my support, except one time, in the spring, when I was sick and sent to him for money, he sent $30. That was when I first went to plaintiff's house. Q. And since that time he has absolutely left you to support yourself? A. Yes, sir. Q. And you are now his wife? A. Yes, sir; before I left plaintiff's house she told me I ought to get my husband to pay the balance due, and I said: 'Why, you know it is impossible for me to get any money from him. I never get any money from him, and there is no use trying.' I know it. Q. When you first went there, was there any talk about your husband being liable for this room? A. No, sir; there was nothing said about who should be responsible. I was then acting in the 'Sultan of Sulu.' Q. And was there any talk following that time, up to the time when you left plaintiff's except this one conversation [above given], referring in any way to your husband paying this indebtedness? A. No, sir; the first time I went over there [to plaintiff's house subsequent to giving up her lodging there], I told plaintiff I was going to pay the board as I could, and she said she would be willing to accept any amount of money. even if it was only 50 cents or $1 a week, and she asked me if my husband would be responsible, and I said that I had nothing to say. I said I was the one that was going to pay it. Q. Were any of the payments, made to plaintiff at any time, received by you from your husband? A. The only time was I received $30 in the early spring. When I went there [to plaintiff's house] I was earning my own living on the stage. I don't know what my husband earned, I think about $25. Q. And each one of you took care of yourselves? A. Yes; except for these $30 that he sent me for medicine when I was sick in the spring. I have taken care of myself since I was married five years ago. I have no idea what my husband is earning now."

It is very clear from the testimony that credit was given by plaintiff, not to the defendant, but to the defendant's wife personally, who was living apart from her husband and supporting herself, which fact was known to plaintiff. The usual presumption of law that the necessaries were furnished to the wife on the husband's credit is therefore rebutted by affirmative proof. Ehrich v. Bucki, 7 Misc. Rep. 118, 27 N. Y. Supp. 247. As the husband and wife were living apart, the burden was upon plaintiff to show the circumstances were such as to render the husband liable. Bostwick v. Brower, 22 Misc. Rep. 709, 710, 49 N. Y. Supp. 1046. There is nothing to indicate that it is owing to defendant's misconduct that his wife is living apart from him. On the contrary, she says they are separated by mutual consent. The proofs

show that whatever was paid to the plaintiff on account of room and board was paid by the wife with her own earnings, which fact was known to plaintiff. The $30 that her husband sent her in the spring were for medicine, not for board, according to her own statement. It was only when the wife left plaintiff that something was said by plaintiff about making the husband pay the balance due, and even then the wife plainly stated that she would pay the balance herself, and not apply to the husband.

It is true that the general rule is, as claimed by appellant, that notwithstanding a separation of husband and wife by mutual consent the former is bound to support the latter, in the absence of either an agreement or a decree of the court relieving him from that burden, and in such case, where he has not made suitable provision for her, if the wife purchases only such things as may be held to be necessaries, the law implies an agency on her part to make the purchases on the husband's credit. Hatch v. Leonard, 165 N. Y. 438, 59 N. E. 270. In the case at bar, as we have seen, this presumption of agency has been affirmatively rebutted by proof showing that the credit was actually given to the wife alone, and not to the husband. The court below reached a correct conclusion in its dispostion of the case. Inasmuch, however, as the pleadings were oral, and no written notice of appearance was served, it was error to allow costs to defendant. Municipal Court Act, Laws 1902, p. 1585, c. 580, § 332.

The judgment will be modified, by striking out the costs, and, as so modified, affirmed, without costs to either party. All concur.